UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| DAVID SCOTT CAUDILL FARMER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 7:16-CV-00025-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, | ) | **&** |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

David Scott Caudill Farmer seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied Farmer's claim for supplemental security income benefits as well as disability insurance benefits. Mr. Farmer brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will DENY Mr. Farmer's Motion for Summary Judgment [R. 21] and GRANT the Commissioner's. [R. 22.]

**I**

**A**

Plaintiff David Scott Caudill Farmer filed an application for Title II disability insurance benefits and Title XVI supplemental social security in August 2008, alleging disability beginning on December 1, 2007. [Transcript (hereinafter, "Tr.") 40.] Farmer's application was initially denied by an Administrative Law Judge in September 2010, but the Appeals Council vacated that decision and remanded the case to a different Administrative Law Judge, Jerry Meade, for reconsideration. [*Id.*] Upon remand, Farmer moved to amend his alleged disability onset date to

October 15, 2006, and ALJ Meade granted the request. [Tr. 41.] Subsequently, the ALJ conducted a video hearing with Mr. Farmer and counsel, and the ALJ issued a final decision ultimately denying both of Farmer's claims for benefits. [Tr. 40-68.]

To evaluate a claim of disability for both Title II disability insurance benefit claims and Title XVI supplemental security income claims, an ALJ conducts a five-step analysis. *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claims) *with* 20 C.F.R. § 416.920 (supplemental security income claims).[1]  First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1520(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity ("RFC"), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's

---

[1] For purposes of a disability insurance benefits claim, a claimant must show that his impairments were disabling prior to the date on which his insured status expired. 20 C.F.R. § 404.131. Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical. Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits. Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

2

impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordon v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At the outset of this case, the ALJ determined that Mr. Farmer met the insured status requirements of the Social Security Act only through December 31, 2011. [Tr. 44]; *see also* 20 C.F.R. § 404.131. Then at step one, the ALJ found Farmer had not engaged in substantial gainful activity since the alleged amended disability onset date. [*Id.*] At step two, the ALJ found Farmer to suffer from the following severe impairments:

> Degenerative disc disease of the cervical and lumbosacral spines, albeit mild; levoscoliosis of the thoracic spine, albeit mild; history of right clavicle fracture with residuals; history of right hand fracture with residuals (status post open reduction and internal fixation); history of cervical, thoracic, and lumbar strain; post-traumatic and degenerative arthritis; Borderline Intellectual Functioning; affective mood disorder; anxiety-related disorder; and polysubstance dependence.

[*Id.*] At step three, the ALJ determined Farmer's combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 or Part 416. [Tr. 50.] Before moving on to step four, the ALJ considered the record and determined Farmer possessed the following residual functional capacity, based on all of Farmer's impairments *including* the substance use disorders:

> Limited to medium work; can frequently climb, balance, stoop, kneel, crouch, and crawl; can frequently be exposed to moving mechanical part[s]; can frequently operate a motor vehicle; can continuously handle, finger, feel, and push/pull with both hands; can frequently reach overhead with the non-dominant left hand; can occasionally reach overhead with the dominant right upper extremity; can understand, remember, and carry out simple instructions; can occasionally deal with work stresses; can occasionally maintain attention and concentration; and can occasionally demonstrate reliability.

[Tr. 56.] After explaining Farmer's RFC based on all impairments, the ALJ found at step four that, based on this RFC, there are no jobs that exist in significant numbers in the national economy that Mr. Foster can perform. [Tr. 60.]

Ordinarily, this conclusion would render a claimant disabled. However, because the ALJ determined one of Farmer's severe impairments was polysubstance dependence, the ALJ continued the analysis. [*See* Tr. 44.] Pursuant to the Social Security Act, an individual is not considered disabled "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Accordingly, the ALJ considered whether Mr. Farmer would still be considered disabled if he stopped his drug and alcohol use. *See* 20 C.F.R. § 404.1535(b)(1).

As set forth in his opinion, the ALJ determined that Farmer would continue to have a severe impairment or combination of impairments even if he suffered from "non-severe" polysubstance dependence. [Tr. 60.] However, the ALJ explained that Farmer would not have an impairment or combination of impairments that meets or medically equals an impairment in 20 C.F.R. Part 404 or Part 416. [Tr. 61.] The ALJ then determined that Farmer would possess the following RFC, based on all of his impairments *except* the substance use disorders:

> Limited to medium work; can frequently climb, balance, stoop, kneel, crouch, and crawl; can frequently be exposed to moving mechanical part[s]; can frequently operate a motor vehicle; can continuously handle, finger, feel, and push/pull with both hands; can frequently reach overhead with the non-dominant left hand; can occasionally reach overhead with the dominant right upper

4

> extremity; can frequently reach in all other directions with both upper extremities; can understand, remember, and carry out simple instructions; can make judgments on simple work-related decisions; can respond appropriately to the public, supervisors, and coworkers as well as usual work situations; and can deal with changes in a routine work setting.

[Tr. 62.] In light of this RFC, the ALJ found that there would be a significant number of jobs in the national economy that Mr. Farmer could perform. [Tr. 67.] Accordingly, at step five, the ALJ concluded that Farmer's substance use disorder is a contributing factor material to the determination of Farmer's disability, because Farmer would not be considered disabled if he stopped the substance use. [Tr. 68 (citing 20 C.F.R. §§ 404.1520(g), 404.1535, 416.920(g), and 416.935).] Thus, the ALJ held that Farmer was not disabled. [*Id.*]

Following the unfavorable decision, Farmer timely appealed to the Appeals Council. However, the Appeals Council denied review on November 3, 2015, and Mr. Farmer now seeks judicial review in this Court. [*See, e.g.*, R. 21-1 at 1.]

**B**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

5

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## II

Mr. Farmer presents three arguments to this Court as grounds for relief from the ALJ's unfavorable decision. Farmer argues (1) the ALJ improperly weighed the medical evidence; (2) the ALJ's finding that Farmer suffers from severe Borderline Intellectual Functioning rather than mild mental retardation was not supported by substantial evidence; and (3) the ALJ's finding that substance use materially contributes to Farmer's disability determination was not supported by substantial evidence. [*See* R. 21-1.] For the reasons set forth below, Mr. Farmer's arguments do not warrant reversal of the ALJ's determination.

### A

First, Mr. Farmer alleges the ALJ inappropriately weighed the medical evidence. The crux of Farmer's argument on this point is that the ALJ failed to abide by the so-called "treating physician rule" with respect to his evaluation of Farmer's narcolepsy, or lack thereof. The Social Security Administration's regulations provide:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2).

The other factors to be considered that are referenced in that regulation include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with other evidence in the record, and whether the treating source is a specialist.  20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), d(3)-d(5); 416.927(d)(2)(i)-(ii), d(3)-d(5).  The regulations also contain a clear procedural requirement that the ALJ must give "good reasons" for discounting a treating physician's opinion, specific enough "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  20 C.F.R. §§ 1527(d)(2), 416.927(d)(2); Social Security Ruling 96-2, 1996 WL 374188, at *5 (July 2, 1996).

In his decision, the ALJ determined Farmer's supposed narcolepsy was not a medically determinable impairment, despite a finding from various doctors including Farmer's treating physician, Dr. Janis Rowe, who stated that Farmer had possible narcolepsy.  [*See* Tr. 48, 793-94.] The ALJ largely discounted Dr. Rowe's opinion and assigned greater weight to the opinions of non-examiners Dr. Brendemuehl, a general surgeon, and Dr. Tessnear, a psychologist.  [Tr. 48-49.]  It was not reversible error for the ALJ to do so.

The ALJ gave good reasons for his decision to afford little weight to Dr. Rowe's purported narcolepsy diagnosis and to the various other treating physicians who suggested

7

Farmer suffers from narcolepsy. [*See id.*] The ALJ specifically noted that the physicians' narcolepsy findings were based on Farmer's subjective complaints, and he explained that a narcolepsy diagnosis was inconsistent with the evidence in the record regarding Farmer's lack of excessive daytime sleepiness. *See also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (noting that treating physician opinions are only entitled to deference "when supported by objective medical evidence"). The ALJ devoted a significant portion of his decision to a detailed discussion of Farmer's purported narcolepsy, and he clearly laid out the rationale for his decisions. [*See* Tr. 48-49.] In light of this, the Court concludes the ALJ did not err when weighing the medical opinions, and the Court finds the ALJ's decision regarding Farmer's narcolepsy was clearly supported by substantial evidence.

**B**

Next, Mr. Farmer contends the ALJ erred in finding he suffers from severe Borderline Intellectual Functioning rather than mild mental retardation. As noted above, the Court's review on this point is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Massanari*, 321 F.3d at 614; *Shelman*, 821 F.2d at 319-20. Pursuant to this standard of review, even if substantial evidence supports a finding that Farmer suffers from mild mental retardation, the ALJ's decision will still be affirmed as long as substantial evidence also supports a finding of severe Borderline Intellectual Functioning. *See Ulman*, 693 F.3d at 714; *Her*, 203 F.3d at 389-90.

The standard for mental retardation, formally referred to in the relevant regulations as "Intellectual Disability," is set forth in Listing 12.05. The Listing requires a claimant to satisfy an introductory diagnostic description, as well as one of four severity prongs. *See* 20 C.F.R. Part 404, Subpart P, app. 1, § 12.00(A). The ALJ determined that, while Mr. Farmer satisfied one of

8

the four severity prongs, he did not meet the diagnostic description for mental retardation. Specifically, the ALJ found Farmer's low IQ scores to satisfy the third severity prong, prong C. [Tr. 45-46.] However, he considered Farmer's level of adaptation and work history to be inconsistent with the diagnostic description, which requires: "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, app. 1, § 12.00(A); [*see also* Tr. 45-46.]

Substantial evidence in the record supports the ALJ's conclusion. While certain medical sources suggested Farmer suffers from mild mental retardation, others found Farmer would not meet the requirements in Listing 12.05 because of his work history and adaptive functioning. [*See, e.g.*, Tr. 252-53, 271-72, 842-43.] And the ALJ discussed in detail his reasons for finding Farmer's adaptive abilities, personal skills, and history of semiskilled to skilled work to be more consistent with severe Borderline Intellectual Functioning than with Listing 12.05. *See Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007) (noting a claimant's ability to perform semiskilled work for a number of years, play guitar, and ride a motorcycle were inconsistent with the diagnostic description for mental retardation). While there may be evidence in the record that supports a finding of mild Intellectual Disability or mental retardation, the ALJ's finding of severe Borderline Intellectual Functioning is still supported by substantial evidence, and the Court will not disturb the ALJ's decision. *See Ulman*, 693 F.3d at 714; *Her*, 203 F.3d at 389-90.

## C

Finally, Mr. Farmer alleges the ALJ erred when he determined Farmer's substance use is a contributing factor material to the determination of disability. Pursuant to the Social Security

9

Act, an individual will not be considered disabled "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The key factor the Commissioner considers to determine whether alcoholism or drug addiction is such a material, contributing factor is whether the Commissioner would still find the claimant disabled if the claimant stopped using drugs or alcohol. *See* 20 C.F.R. § 404.1535(b)(1).

Mr. Farmer points out several ways he believes the ALJ "disregard[ed] disabling evidence and gloss[ed] over the severity" of his mental limitations. [*See* R. 21-1 at 19.] But this is to no avail. As the Commissioner points out in her motion for summary judgment, the record is replete with evidence related to Mr. Farmer's history of alcoholism and DUI charges, as well as Farmer's marijuana, opiate, and benzodiazepine use. [*See* R. 22 (citing various portions of the Transcript).] Numerous medical professionals discussed Farmer's troubling use of Xanax and opined as to how the Xanax use could be impacting Farmer's other physical and mental health symptoms. [*Id.* (again, citing various medical sources).] In his opinion, the ALJ described at length why he believes, based on the entire record, Farmer's RFC would change if Farmer discontinued drug and alcohol use. [*See* Tr. 60-66.] Ultimately, Mr. Farmer bears the burden of proof to show that his substance abuse is not a factor material to the determination of disability. The Court cannot find the ALJ's decision on this point was unsupported by substantial evidence, particularly where Mr. Farmer bears the burden of proving his substance abuse is not a factor material to the determination of disability. *See Mittlestedt v. Apfel*, 204 F.3d 847, 852 (6th Cir. 2000); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999). *See also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion.").

## III

Therefore, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff David Scott Caudill Farmer's Motion for Summary Judgment [R. 21] is **DENIED**, but the Commissioner's Motion for Summary Judgment [R. 22] is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 30th day of January, 2017.

Gregory F. Van Tatenhove
United States District Judge